*Tagged Opinion*



**ORDERED in the Southern District of Florida on September 30, 2022.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 22-12017-LMI |
| DRO 15R LLC, | Chapter 11 |
| Debtor. | |
| _____/ | |
| DRO 15R LLC, a Florida limited liability company, | ADV. CASE NO. 22-01130-LMI |
| Plaintiff, | |
| vs. | |
| AJAR HOLDINGS, LLC, a Wyoming limited liability company, RO 15R, LLC, a Florida limited liability company, and RAZIEL OFER, an individual. | |
| Defendants. | |
| _____/ | |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT AJAR HOLDINGS' CROSS-MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court for hearing on August 23, 2022 (the "Hearing") on the *Motion for Summary Judgment* (ECF #25) ("DRO's Motion") filed by the Plaintiff DRO 15R, LLC ("DRO"), and on *Defendant AJAR Holdings' Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment* (ECF #59) ("AJAR's Cross-Motion") filed by Defendant and Counter-Plaintiff / Cross-Plaintiff / Third-Party Plaintiff AJAR Holdings, LLC ("AJAR") (collectively, the "Motions"). The Court has considered the memoranda and exhibits submitted by the parties in support of, and in opposition to, the Motions, and has heard the arguments of counsel at the Hearing.[1],[2] For the reasons set forth below, DRO's Motion is denied and AJAR's Cross-Motion is granted.

## **FACTS**

The parties have advised the Court that this dispute can be resolved on summary judgment, as the undisputed material facts compel judgment in their

---

[1] *Defendant AJAR Holdings' Notice of Filing Materials in Support of Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment* (ECF #60) ("AJAR's NOF"); *Defendant AJAR Holdings' Notice of Filing Supplement to Materials in Support of Response to Plaintiff's Motion for Summary Judgment and Cross-Motion For Summary Judgment* (ECF #61) ("AJAR's Supplemental NOF"); *Defendant AJAR Holdings' Notice of Filing Second Supplement to Materials in Support of Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment* (ECF #65) ("AJAR's Second Supplemental NOF"); *Plaintiff's: (A) Motion to Strike Affidavit of Roniel Rodriguez, Esq. in Support of Defendant, AJAR Holdings, LLC's Cross-Motion for Summary Judgment; (B) Reply to Defendant AJAR Holding, LLC's Response to Motion for Summary Judgmentl [sic]; and (C) Response to Defendant's Cross-Motion for Summary Judgment* (ECF #71) ("Plaintiff's Response"); *Defendants, RO15R, LLC and Raziel Ofer's Joinder to Plaintiff's Response to Defendant AJAR Holding, LLC's Cross-Motion for Summary Judgment* (ECF #73) (the "Joinder"); and *Defendant AJAR Holdings' Reply in Support of Cross-Motion for Summary Judgment* (ECF #80) ("AJAR's Reply").

[2] At the Hearing, counsel for DRO made an *ore tenus* motion to allow the late filings of *Plaintiff's Notice of Filing Relevant State Court Pleadings* (ECF #93) and *Plaintiff's Notice of Filing Additional Relevant State Court Pleadings* (ECF #94) (the "*Ore Tenus* Motion"). Both pleadings were filed the day of the Hearing. The Court denied the *Ore Tenus* Motion for the reasons stated on the record.

respective favors.[3] This case revolves around a dispute as to ownership of the real property located at 1560 and 1568 Drexel Avenue, Miami Beach (the "Property"). On May 24, 2022, DRO filed the Second Amended Complaint (the "Complaint") (ECF #9) seeking (1) to quiet title to the Property in its favor and (2) reformation of the DRO Quit Claim Deed (defined below). AJAR filed its Answer and Affirmative Defenses[4] in addition to a Counterclaim[5], Cross-Claim[6], and Third-Party Claim[7] seeking (1) to quiet title to the Property in its favor and (2) to determine the validity, priority, and amount of the liens asserted by RO 15R, LLC ("RO15"), Raz Ofer ("Ofer"), and MRO 15R LLC ("MRO")[8]. DRO, RO15, and Ofer filed their Answer and Affirmative Defenses[9] to AJAR's Counterclaim, Cross-Claim, and Third-Party Claim. The following facts are undisputed[10]:

---

[3] At oral argument the Plaintiff, DRO, argued for the first time that summary judgment was not appropriate because there was an issue regarding a breached post-execution settlement between Opustone and Ofer, Drexel, and RO15 which settlement was being negotiated by Roniel Rodriguez as counsel for Opustone at the same time he was counsel for, and allegedly a principal of, AJAR. The Court does not find this precludes resolution on summary judgment. However, the Court addresses these facts in part in note 49 *infra*.

[4] *AJAR Holdings' Answer, Affirmative Defenses, Counterclaim, Cross-Claim And Third-Party Claim* (ECF #16) ("AJAR's Answer").

[5] *AJAR Holdings' Answer, Affirmative Defenses, Counterclaim, Cross-Claim And Third-Party Claim* (ECF #17) ("AJAR's Counterclaim").

[6] *AJAR Holdings' Answer, Affirmative Defenses, Counterclaim, Cross-Claim And Third-Party Claim* (ECF #18) ("AJAR's Cross-Claim").

[7] *AJAR Holdings' Answer, Affirmative Defenses, Counterclaim, Cross-Claim And Third-Party Claim* (ECF #19) ("AJAR's Third-Party Claim").

[8] AJAR's Third-Party Claim is against MRO on behalf of which Ofer filed a claim of lien against the Property as the purported assignee of RO15, but an entity called "MRO 15R LLC" does not exist. (AJAR's NOF, Ex. C at para 56).

[9] *DRO 15R, LLC Answer and Affirmative Defenses to AJAR Holdings, LLC's Counterclaim, Cross-Claim and Third-Party Claim to Quiet Title and to Determine Validity, Priority and Amount of Liens* (ECF #34) ("DRO's Answer and Affirmative Defenses"); *RO 15R, LLC and Raziel Ofer Answer and Affirmative Defenses to AJAR Holdings, LLC's Counterclaim, Cross-Claim and Third-Party Claim to Quiet Title and to Determine Validity, Priority and Amount of Liens* (ECF #40) ("RO15 and Ofer's Answer and Affirmative Defenses").

[10] The majority of these facts were stipulated to by the parties. *See Joint Stipulation of Facts in Connection with Plaintiff's Motion for Summary Judgment (ECF#25) and AJAR's Response and Cross-Motion for Summary Judgment (ECF#59)* (ECF #82) ("JPS"). Any additional facts are included in either the Complaint, AJAR's Answer, AJAR's Counterclaim, AJAR's Cross-Claim, AJAR's Third-Party Claim, DRO's Answer and Affirmative Defenses, RO15 and Ofer's Answer and Affirmative Defenses, or the Motions and the attachments thereto and were not disputed in any responsive pleading; thus, the Court considers these facts undisputed.

**A.**     On or about June 17, 2013, 1560 / 1568 Drexel Avenue, LLC ("Drexel") became the owner of the real property located at 1560 and 1568 Drexel Avenue, Miami Beach (the "Property").

**B.**     Drexel, since 2014 and continuing through November 8, 2020[11], was owned by MPM 17A, LLC ("MPM").

**C.**     MPM was the sole owner and manager of Drexel, and Ofer was the sole owner and manager of MPM.

**D.**     On March 27, 2019, Opustone, LLC ("Opustone") filed a complaint in Miami-Dade Circuit Court against Ofer, Drexel, and other entities for breach of contract, conversion, civil theft, and worthless checks. *Opustone v. Ofer*, Case No. 19-009489-CA-01 (the "Opustone Action").

**E.**     On March 3, 2020, the Opustone court entered final summary judgment against all defendants on all counts in the Opustone Action (the "Opustone Judgment").

**F.**     On October 21, 2020, the Opustone court issued writs of execution against each of the defendants.

**G.**     On October 26, 2020, Opustone filed a Motion to Compel Issuance or Turnover of Membership Interests. On November 9, 2020 Opustone filed an Amended Motion to Compel Issuance or Turnover of Membership Interests (collectively, the "Turnover Motion"), to compel Ofer to provide his membership

---

[11] The Court is not clear why the operative date in the JPS is November 8, 2020 since the shares of MPM were not turned over until November 16, 2020 and were not sold until March 24, 2021, but this does not impact the material facts.

interests in entities including MPM, 1434 Collins, LLC, and RO1 15R, LLC[12], to the Miami-Dade County Sheriff for levy and sale.

**H.**     The Opustone court conducted a hearing and granted the Motion for Turnover as to MPM and other entities on November 10, 2020, and a written order was entered on November 16, 2020 at 4:32 p.m. (the "Turnover Order").

**I.**     Ofer prepared and recorded at 11:34 a.m. on November 16, 2020 a "Quit Claim Deed" in favor of DRO (the "DRO Quit Claim Deed"). The DRO Quit Claim Deed states:

> This Quit Claim Deed made on the 3rd day of November 2020, between 1560/1568 Drexel Avenue, LLC, a Florida Limited Liability Company, whose mailing address is 1568 Drexel Avenue, Apartment 5, Miami Beach, FL 33139, hereinafter called the First Party, and DRO 15R, LLC, a Florida Limited Liability Company, whose address is 1434 Collins Avenue, Suite 9, Miami Beach, FL 33139, hereinafter called the Second Party.

**J.**     The parties have stipulated that the DRO Quit Claim Deed was signed by the ***grantee*** – DRO – and not by the grantor, Drexel. However, that is not entirely accurate. The grantor, Drexel, is identified as the party signing the DRO Quit Claim Deed. However, the deed reflects that it is executed on behalf of Drexel "By: Raziel Ofer, as Managing Member of DRO 15R, LLC, a Florida Limited Liability Company, its manager," and the notarization is for Raziel Ofer as managing member of DRO 15R, LLC.

**K.**     The parties also stipulated that neither DRO nor Ofer, as managing member of DRO, had authority to sign for Drexel. DRO was not a manager, member, or authorized person of Drexel at the time the DRO Quit Claim Deed

---

[12] This is not the same entity as RO 15R, LLC, the Defendant in this case which has asserted a lien against the Property.

was executed, acknowledged, or recorded. MPM was the sole owner and managing member of Drexel as of November 8, 2020.

**L.**    The Miami-Dade County Sheriff conducted a judicial sale (the "Sheriff's Sale") of the membership interests of MPM, 1434 Collins, LLC, and RO1 15R, LLC on March 24, 2021, at which Sheriff's Sale AJAR was the successful purchaser of Ofer's interests in MPM, 1434 Collins, LLC, and RO1 15R, LLC for a sum of $5.00.[13]

**M.**    Following the Sheriff's Sale, Drexel, through its sole member MPM, by its sole member AJAR, executed on March 24, 2021 and recorded on March 30, 2021 a Quit Claim Deed from Drexel to AJAR for the Property (the "AJAR Deed"), and filed and recorded a notice of lis pendens.[14]

**N.**    In the Opustone Action, Ofer unsuccessfully: (1) moved to set aside the execution sale of the membership interests on August 9, 2021[15]; (2) moved for "equitable relief" from the transfer of the Property to AJAR on August 9, 2021[16]; and (3) filed a renewed motion to set aside the execution sale on October 1, 2021.[17]

**O.**    On June 23, 2021, DRO, RO15, and Ofer filed a complaint against AJAR in Miami-Dade Circuit Court to quiet title to the Property, claiming that its interest under the DRO Quit Claim Deed was superior to AJAR's interest under

---

[13] (Opustone Action at ECF #101); (AJAR's NOF, Ex. HH).
[14] As reflected in the JPS, on March 30, 2021 Ofer filed an objection to the lis pendens filed by AJAR first stating that RO1 15R, LLC rather than MPM was the owner of Drexel, and then an amended objection claiming that DRO had been the owner of Drexel. This is, of course, not only inconsistent with the JPS, but also with actions later taken by Ofer.
[15] (Opustone Action at ECF #133, denied at ECF #142); (AJAR's NOF, Ex. MM, NN).
[16] (Opustone Action at ECF #134, denied at ECF #141); (AJAR's NOF, Ex. OO, PP).
[17] (Opustone Action at ECF #145, denied at ECF #150, appeal dismissed at ECF #159); (AJAR's NOF, Ex. QQ, RR, SS).

the AJAR Deed (the "DRO Quiet Title Action").[18] AJAR filed a counterclaim and third-party claim in the DRO Quiet Title Action against DRO, RO15 and Ofer for ejectment, unjust enrichment and to quiet title to the Property. The DRO Quiet Title Action was removed to this Court and is currently abated pending resolution of this adversary proceeding.[19]

**P.**    On July 13, 2021, Ofer recorded a "Corrective Quit Claim Deed" purportedly executed by Drexel, and purportedly "being recorded to correct the grantor name in the signature pane" of the prior DRO Quit Claim Deed ("DRO Corrective Quit Claim Deed"). The document purports to be executed by "1560 1568 Drexel Avenue, LLC by its Managing Member, MPM 17A, LLC, by its Managing Member, Raz Ofer."

**Q.**    At the time the DRO Corrective Quit Claim Deed was executed and recorded, Ofer was no longer a managing member or owner of MPM or Drexel.

**R.**    Ofer, personally and through various entities, claims an interest in the Property by virtue of the following: (a) a December 1, 2020 claim of lien on behalf of RO15; (b) an October 12, 2021 claim of lien on behalf of RO15; (c) an October 15, 2021 claim of lien on behalf of RO15; (d) an October 19, 2021 corrective claim of lien on behalf of RO15 (which purports to correct the December 1, 2020 claim of lien) (collectively, the "RO15 Claims of Lien"); (e) an October 26, 2021 claim of lien on behalf of Ofer individually (the "Ofer Claim of Lien"); and (f) an October 27, 2021 corrective claim of lien on behalf of MRO

---

[18] There is a significant amount of procedural history relating to the DRO Quiet Title Action that has no bearing on this action other than this Court's decision not to remand the DRO Quiet Title Action when it was removed to this Court.

[19] The DRO Quiet Title Action is pending in this Court as Adv. No. 22-01128.

(which purports to correct the December 1, 2020 claim of lien) (the "MRO Claim of Lien").[20] After this action was filed (and after the petition date of this bankruptcy case), Ofer also filed, on July 14, 2022, a claim of lien and "corrective" claim of lien on behalf of Creative Directions Inc. ("CDI") (collectively, the "CDI Claims of Lien"). The liens are all asserted as construction liens against the Property.

   **S.**    In response to AJAR's discovery requests to DRO[21], Ofer, and RO15[22] for any documents which substantiate any labor, services or materials provided by them to the Property or any advances made for such labor, services or materials to support the claims of lien, DRO has confirmed that no responsive documents exist.[23] Ofer and RO15, through their counsel, produced only three responsive documents which consist of:

---

[20] Because MRO is an entity that does not exist, the validity and priority of the MRO Claim of Lien is not addressed further in this opinion. *See supra* note 8.

[21] The discovery requests served on DRO sought: "All documents and communications which evidence or relate to any sums RO15 provided, directly or indirectly, for the improvement or maintenance of the Property," and "All documents and communications which evidence or relate to any sums Ofer provided, directly or indirectly, for the improvement or maintenance of the Property." (JPS, para. 45).

[22] On May 23, 2022, this Court entered an Order in the DRO Quiet Title Action requiring Ofer and RO15 to respond to requests for production previously issued by the state court. (AJAR's NOF, Ex. I). The discovery requests sought (1) all documents which support, relate to, or evidence any labor, equipment, material or services RO15 claimed to have provided to the Property; (2) all invoices which support, relate to or evidence any labor, equipment, material or services which RO15 claimed to have provided to the Property; (3) any and all evidence of any payment of any items claimed in its asserted liens against the Property; (4) any contracts for labor, equipment, material or services claimed in its asserted liens against the Property; (5) any invoices for labor, equipment, material or services claimed in its asserted liens against the Property; (6) all communications related to labor, equipment, material or services claimed in its asserted liens against the Property; (7) any and all documents which evidence any amounts claimed by them in its liens; and (8) any licenses issued to it by the State of Florida Department of Business and Professional Regulation. From Ofer, the requests also sought (1) all documents which evidence any sums he provided, directly or indirectly, for the improvement or maintenance of the Property; and (2) any contracts, leases or other agreements related to the Property. (JPS, para. 34).

[23] DRO has also confirmed that there are no documents which support or relate to the following allegations:

(1) A claim of lien recorded on July 14, 2022 (recorded after the petition date of this case), sworn to and subscribed by Ofer as the "manager" of CDI purporting to assert a claim of lien against the Property on behalf of CDI for $10,500,000 "in accordance with a contract with [Drexel] reflected by the Notice of Commencement (NOC) recorded Sept. 9, 2015 recorded at official record book 29785, Page 4551," for items purportedly first furnished October 22, 2015 and last furnished April 18, 2022, and claiming to have served notice to the owner on April 18, 2022 by hand;

(2) A corrective claim of lien also recorded on July 14, 2022 sworn to and subscribed by Ofer as the "manager" of CDI claiming to be recorded to correct the October 19, 2021 corrective claim of lien on behalf of RO15, and purporting to assert a claim of lien against the Property on behalf of CDI for $10,500,00 "in accordance with a contract with [Drexel] reflected by the Notice of Commencement (NOC) recorded Sept. 9, 2015 recorded at official record book 29785, Page 4551," for items purportedly first furnished October 22, 2015 and last furnished August 15, 2021, and claiming to have served notice to the owner on August 15, 2021 by hand;

(3) A "construction agreement" supposedly dated October 22, 2015, supposedly between Drexel and CDI, supposedly for a contract price of $10,500,000, and supposedly signed on October 22, 2015 (the "CDI

---

[Ofer] began to advance sums for the improvements to Drexel and to secure his position, [Ofer] executed a Consent Judgment in favor of himself in the event of any failures of performance on the part of Drexel.

Due to a failure of Drexel to meet several of its deadlines to repay sums advanced by Ofer back to him, Ofer executed on the Consent Judgment, the basis for the conveyance to DRO.

(JPS, para. 46).

Construction Agreement"). The CDI Construction Agreement is signed on behalf of CDI by Ofer and Roberto Mendez ("Mendez") (who is co-owner with Ofer of DRO as well as other entities associated with Ofer).

**T**.    The various claims of lien refer to the following notices of commencement ("NOCs"):

(1)    The "Notice of Commencement (NOC) recorded Sept. 9, 2015 recorded at official record book 29785, Page 4551" recorded on September 22, 2015 by South Beach Construction as contractor (not CDI, RO15 or Ofer) (the "September 2015 NOC"). South Beach Construction issued a satisfaction and release of lien with respect to any claim against Drexel on June 15, 2017.

(2)    On December 7, 2018 a NOC was recorded giving notice of improvements to be made to the Property by CDI (AJAR's NOF, Ex. N) (the "2018 NOC"). On July 24, 2019, a notice of termination of the 2018 NOC was recorded (AJAR's NOF, Ex. O) (the "2019 Termination"). The 2019 Termination is signed and sworn to by Ofer, as manager of MPM, on behalf of Drexel, and attests that "all lienors have been paid in full or prorate [sic] in accordance with section 713.06(4), Florida Statutes, or otherwise have not performed any work or furnished any materials the cost of which remain unpaid." (AJAR's NOF, Ex. O).

(3)    On July 24, 2019, a NOC was recorded giving notice of improvements to the Property to be made by CDI (AJAR's NOF, Ex. P) (the "2019 NOC"). On March 20, 2020, a notice of termination of the 2019 NOC was recorded (AJAR's NOF, Ex. R) (the "2020 Termination"). The 2020

Termination is signed and sworn to by Ofer, as manager of MPM, on behalf of Drexel, and attests that "all lienors have been paid in full or prorate [sic] in accordance with section 713.06(4), Florida Statutes, or otherwise have not performed any work or furnished any materials the cost of which remain unpaid." (AJAR's NOF, Ex. R).

**U**.    The 2020 Termination attaches a "Contractor's Affidavit and Release of Notice of Commencement" (the "CDI NOC Release") executed by Abraham Jaffe, as President of CDI on February 20, 2020, which attests that:

> [A]ll construction work at the Property performed by or on behalf of Contractor has ceased as of the date hereof and, if further work is to be performed by Contractor, any further work shall not be recommenced until after the execution and recording in the public records of the following documents: (a) Notice of Termination which terminates the existing Notice of Commencement recorded on July 24, 2019 in Official Records Book 31539, Page 3726, of the Public Records of Miami-Dade County, Florida; (b) the recording of the mortgage and related loan documents in favor of Lender; and (c) a new Notice of Commencement signed on behalf of Owner in favor of Contractor (provided additional work shall be performed by Contractor at the Property).
>
> All work has been performed and completed up to this point in accordance with the terms of the contract between Contractor and Owner; further, all subcontractors, laborers and material men, if any, are all paid up to date and current in accordance with the terms of the contract between Contractor and Owner. There is no past due money owed by Owner to Contractor or to any subcontractor, laborer or materialman acting under Contractor relating [to] the work performed under the Notice of Commencement identified in paragraphs #3 and #4, hereof.

(AJAR's NOF, Ex. R).

**V**.    No other NOC was recorded with regard to any additional work to be performed by CDI.

11

**W**.     As of October 2015, and at all times prior to December 21, 2021, the only officer listed in the annual reports of CDI was Abraham Jaffe. (AJAR's NOF, Ex. S).

## ANALYSIS

"Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law." *In re Ortega T.*, 573 B.R. 284, 290 (Bankr. S.D. Fla. 2017). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only

12

whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). If there are no material facts in dispute, and only a purely legal question remains to be decided by the Court, then granting summary judgment is appropriate. *Anderson,* 477 U.S. at 247–48.

Because there are no genuine issues of material fact that would prevent resolution at the summary judgment stage this Court need only decide questions of law, namely (1) whether the DRO Quit Claim Deed is valid; (2) whether the DRO Corrective Quit Claim Deed is valid; (3) whether the DRO Quit Claim Deed can be reformed; and (4) whether RO15 and Ofer's liens on the Property are valid, and if valid, have priority over AJAR's interest in the Property.

## I.    The DRO Quit Claim Deed is Not Valid.

Florida law requires any conveyance of real property to be "in writing, signed in the presence of two subscribing witnesses **by the party** creating, making, granting, **conveying**, transferring, or releasing such estate, interest, or term of more than 1 year, or by the party's lawfully authorized agent." Fla. Stat. §689.01(1) (emphasis added). A deed is "ineffective on its face to convey title [when it is] not executed in compliance with the conveyancing statute[]." *DGG Dev. Corp. v. Estate of Capponi*, 983 So. 2d 1232, 1234 (Fla. 5th DCA 2008); *George Anderson Training and Consulting Inc. v. Miller Bey Paralegal and Financing, LLC,* 313 So. 3d 214, 219-20 (Fla. 2d DCA 2021).

Moreover, if the person who signs the deed on behalf of the grantor does not have authority to sign on behalf of the grantor, the deed is ineffective. *George Anderson Training,* 313 So. 3d at 219-20 (finding a deed to be invalid on its face when "the special warranty deed was signed by Frank Miller as <u>both</u> grantor and witness. But Mr. Miller could not be the grantor because he was not an owner; his only relationship to the deed was as a member of the purported grantee, 'Miller Bey Paralegal & Financing, LLC.'") (emphasis in original). *See Dingle v. Prikhdina,* 59 So. 3d 326 (Fla. 5th DCA 2011). Failure to comply with section 689.01 renders a deed ineffective to transfer title under Florida law. *See In re Leto*, 2007 WL 4117271, at *5 (Bankr. S.D. Fla. 2007).

The DRO Quit Claim Deed was invalid on its face because it was not signed by a person authorized to sign on behalf of the grantor, Drexel. Rather, Ofer, as managing member of DRO, the *grantee*, signed on behalf of Drexel.  Thus, the DRO Quit Claim Deed was ineffective. Even if the lack of authority of the signator

was not evident on the face of the DRO Quit Claim Deed, the deed would still be ineffective since a deed is still invalid even where the deficiency is not obvious on the face of the document. *See Dingle,* 59 So. 3d at 328 (finding that a deed executed by corporation's attorney-in-fact was void when the attorney-in-fact lacked the authority to make a gift of corporate property); *Radison Props., Inc. v. Flamingo Groves, Inc.*, 767 So. 2d 587, 590 (Fla. 4th DCA 2000) (holding that a deed executed by former corporate president was void when former president was no longer a director or an officer of corporation and therefore had no authority to execute the deed on behalf of the corporation).

## II.    The DRO Corrective Quit Claim Deed is Not Valid.

"A deed containing an incorrect description or a misspelling of names may be corrected by a subsequent instrument clearly identified as a correction deed." *Golden v. Hayes*, 277 So. 2d 816, 817 (Fla. 1st DCA 1973). When an original deed is ineffective, a corrective deed is required in order to convey title. *See Leto*, 2007 WL 4117271 at *5. Ofer attempted to correct the problem by executing the DRO Corrective Quit Claim Deed. That deed was signed by Ofer as managing member of MPM on behalf of Drexel.[24] The DRO Corrective Quit Claim Deed was recorded on July 13, 2021, *after* AJAR's March 24, 2021 purchase of Ofer's membership interests in MPM. At that time Ofer no longer had any authority to sign a document on behalf of MPM or Drexel.  In fact, Ofer lacked authority to sign any document on behalf of Drexel after  4:32 p.m. on November 16, 2020

---

[24] The DRO Corrective Quit Claim Deed was  executed by "1560 1568 Drexel Avenue, LLC by its Managing Member, MPM 17A, LLC, by its Managing Member, Raz Ofer."

when the Turnover Order was entered.[25] Therefore, because Ofer did not have authority to sign any document on behalf of Drexel on July 13, 2021, the DRO Corrective Quit Claim Deed is invalid.[26]

### III.    The DRO Quit Claim Deed Cannot be Reformed.

A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. This principle is applicable to instruments of conveyance of real property as well as to contracts and can be applied to correct an erroneous land description in order to protect a person's rights in real property. Notably, in reforming a written instrument, an equity court in no way alters the agreement of the parties. Instead, the reformation only corrects the defective written instrument ***so that it accurately reflects the true terms of the agreement actually reached***.

*Providence Square Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1369-70 (Fla. 1987) (internal citations omitted) (emphasis added).

Reformation does not apply when there is (1) no consideration; (2) no mutual mistake of fact; (3) unclean hands; (4) an intervening interest; or (5) failure to join an indispensable party. *See Biancardi*, 507 So. 2d at 1370; *Holley v. May*, 75 So. 2d 696 (Fla. 1965); *Smith v. Pattishall,* 176 So. 568 (Fla. 1937); *Brown v. Brown*, 501 So. 2d 24 (Fla. 5th DCA 1986); *Antonelli v. Smith*, 556 So. 2d 1132, 1135 (Fla. 3d DCA 1989).

### A.    Lack of Consideration

---

[25] The timing, and the consequence, of the entry of the Turnover Order  and the impact on Ofer's authority to act on behalf of Drexel was provided by counsel for Ofer at the Hearing.

[26] Thus, even if the relation back statute, Fla. Stat. §689.041 applied, which is does not (the statute only applies to "scrivener's errors" which is defined as "a single error or omission in the legal description"), there is no relation back possible because the DRO Corrective Quit Claim Deed is not a valid legal document.

"[A]s a general rule, . . . equity [will not] reform a contract or conveyance which is merely voluntary and based on no consideration." *Pattishall*, 176 So. at 571. Generally, the burden is on the plaintiff to "allege and prove that there was a valuable or meritorious consideration for the deed." *Id.* "Any consideration which will support a deed or mortgage is sufficient for the purpose of reformation. . . . One who supports his claim for reformation by showing not a valuable but only a meritorious consideration for the conveyance in question cannot get the assistance of the court to the prejudice of other persons the foundation of whose claims are equally or more meritorious." *Id.* at 483 (internal citations omitted).

A unilaterally created document is not subject to reformation because there is no consideration for the document. *See Biancardi*, 507 So. 2d at 1370. A gratuitous deed is a unilateral act. *Id.* ("[W]here a deed is given gratuitously and thereby constitutes a unilateral act on the part of the grantor, or where the only consideration is 'love and affection' rather than material value, equity will not decree reformation on the ground of mistake. On the other hand, a deed given pursuant to valuable consideration is normally the result of some degree of bargaining and is, therefore, bilateral in character.") (internal citations omitted).

A gift is never subject to reformation because the purpose of reformation is to correctly reflect the intent of the parties to an agreement and with a gift there is no agreement. *See Brown*, 501 So. 2d at 27 ("a donor's intent in making a gratuitous promise to make a gift, or any mistake of the donor in attempting to effectuate his donative intent, is not a proper subject for legal inquiry and relief because a gratuitous promise to make a gift does not constitute a contract

and is not legally enforceable."). *But see Antonelli*, 556 So. 2d at 1133 (holding that a change of position in reliance on a gratuitous transfer may be sufficient consideration to support a claim for reformation of a purely gratuitous deed).

DRO argues that since the DRO Quit Claim Deed mentions the transfer is for consideration, that is sufficient to establish consideration.  However, "[t]he recitation of consideration in a deed raises a presumption thereof, but is open to explanation by parol proof as to actual receipt of the consideration. Where the payment of a valuable consideration becomes a material question, it must be affirmatively proved by the party relying upon it, and such payment cannot be proved by the mere recital of it in the deed." *J. C. Vereen & Sons, Inc. v. City of Miami*, 397 So. 2d 979, 982–83 (Fla. 3d DCA 1981) (internal citations omitted); *see also Walker v. Layton,* 469 So. 2d 873, 874 (Fla. 3d DCA 1985).

In this case, there is no dispute that  there was  no consideration from DRO to Drexel in connection with execution of the DRO Quit Claim Deed. The parties stipulated that there were no agreements between DRO and Drexel relating to the Property.[27] Ofer's testimony at DRO's 341 meeting confirmed that DRO did not pay Drexel any money for the transfer of ownership "because it was the same ownership."[28] In the Plaintiff's Response, DRO argues that there was consideration because Ofer explained at his deposition that the Property was transferred for "tax reasons." However, AJAR correctly points out that Ofer testified at his deposition that the transfer conferred a tax benefit onto Ofer personally, or alternatively, to DRO.[29] Neither of the alleged "tax reasons"

---

[27] (JPS, para. 33).
[28] (*See Tr. of April 8, 2022 341 Meeting of Creditors* attached as Ex. B to AJAR's Reply (ECF #80)).
[29] (AJAR's NOF, Ex. JJJ at 74:19-25; 77:23).

conferred a benefit onto Drexel. Moreover, at the Hearing, when the Court asked counsel for DRO what was the consideration for the transfer of the Property from Drexel to DRO, counsel for DRO said it was an "intercompany transfer" and conceded that an intercompany transfer is treated like a gift.[30, 31]

### B.    No Mutual Mistake

Reformation "involve[s] a determination of the true intent of contracting parties and the effect of any mistake resulting in a difference between the true intent of the parties and the written contract they adopted to evidence their intent or in a difference between the contract to convey land and the deed given in satisfaction of the contracted obligation of the seller-grantor under the contract." *Brown*, 501 So. 2d at 26-27. A mistake in the execution of a gratuitous deed is not a mutual mistake. *Id.* at 27 ("When two parties enter into a contract there must be a mutual intent—a 'meeting of the minds'—concerning which there can be a 'mutual mistake' subject to certain legal corrections. However, the intent a donor must have to make a valid gift is entirely unilateral and subjective."). *See Holley,* 75 So. 2d at 698.

In this case, as stipulated by the parties, there was no agreement between Drexel and DRO. Thus the error in the DRO Quit Claim Deed was not "an ensuing mistake in reducing the contract of the parties to a correct writing." *Id.*  Because Drexel's conveyance of the Property to DRO  was not based on any agreement between them,  no  mutual mistake is possible.

---

[30] (*See Tr. of August 23, 2022 Hearing* at 39-40 (ECF #103)).

[31] In the absence of fraud or other legal impediment to an intercompany transfer, a unilateral decision by a common owner to transfer assets is not "bad", but if a mistake occurs in such a "corporate reshuffling", reformation is not available, even if the mistake is inconsistent with the common owner's intent.

### C.     Unclean Hands

Reformation is an equitable remedy and is therefore subject to equitable defenses. "[T]he question whether to grant relief is addressed to the sound discretion of the court, after weighing all of the interests involved. Thus, '[h]e who asks for the remedy must make an equitable showing. If his case is weak in its equities, reformation will be denied.'" *Antonelli*, 556 So. 2d at 1134 (citing *Pattishall*, 176 So. at 576).

AJAR argues that DRO and Ofer have unclean hands because they fraudulently attempted to shield the Property from Opustone, a judgment creditor of Ofer and Drexel, when they attempted to transfer the Property to DRO without any consideration. AJAR argues that this was clearly an attempt to avoid the effect of the Turnover Order. While AJAR's argument is certainly supported by the timing of the transfer, it is not relevant.  If in fact Ofer executed the DRO Quit Claim Deed  to avoid paying Opustone, that has nothing to do with AJAR, who, as counsel for AJAR repeatedly argued, is NOT Opustone, notwithstanding that they are represented by the same lawyer.[32]

---

[32] Even if the unclean hands argument is one AJAR could raise,  any  unclean hands defense would require evidence and is thus not appropriate for consideration on summary judgment.

### D.   Intervening Interest

AJAR argues that reformation is also not appropriate because reformation cannot be granted at the expense of an intervening interest. *See Pattishall*, 176 So. 568.   A "deed from [grantor] to [grantee] may be equitably reformed as between the parties thereto . . ., but as against [an intervening party who acquires a valid lien on the property], equity will not lend its hand to deprive them of their vested right. [The intervening party had nothing] to do with the making of the deed, nor with any mistake or oversight in the description therein contained, nor is it charged that they had any notice thereof except such notice as the record of the deed disclosed." *Id.* at 572. "Reformation is generally allowed against all persons except a bona fide purchaser for value and without notice." *Fla. Masters Packing, Inc. v. Craig*, 739 So. 2d 1288, 1290 (Fla. 4th DCA 1999). Notice can be either actual or constructive. *Id.* "Constructive notice includes all recitals, references or matters ***appearing upon the face of any deed*** which forms an essential link in the chain of title." *Id.* at 1291 (internal citations omitted) (emphasis added).

The DRO Quit Claim Deed was defective on its face.   It was clear that the signature block and notarial acknowledgement identified an unauthorized signator.   Moreover, even if the defect was not facially evident, AJAR knew that MPM, not DRO, was the owner of Drexel. AJAR argues that a facially faulty deed imparts no notice. That is not correct. *See DGG Dev. Corp.*, 983 So. 2d 1232. AJAR had constructive, if not actual, notice of the invalidity of the DRO Quit Claim Deed. Finally, AJAR didn't purchase the Property; AJAR purchased the stock in MPM.  Therefore, AJAR does not qualify as a bona fide purchaser without

notice, and its intervening interest is not a bar to relief, if relief was otherwise available.

### E.    Failure to Add Indispensable Party

Failure to add an indispensable party to a reformation action is grounds for dismissal. *See Antonelli*, 556 So. 2d at 1134. "A dismissal for failure to join indispensable parties is, however, a dismissal without prejudice." *Id.* AJAR is correct in its argument that the grantor under the DRO Quit Claim Deed (Drexel) is an indispensable party and DRO's failure to join Drexel as a party to this action prevents reformation. However, the failure to join Drexel is fixable.[33]

In order to support its claim for reformation, DRO had to show that there is no issue of material disputed fact with respect to any of the required elements of its claim for reformation. However the material undisputed facts clearly show that DRO cannot support at least three of the critical elements of its claim and so DRO is not entitled to summary judgment on its reformation claim.

---

[33] Counsel for DRO argued that somehow it was incumbent on Drexel as the indispensable party to intervene and its failure to do so should have some adverse impact on AJAR's argument. This argument by counsel for DRO has no merit.

22

**IV.    RO15 And Ofer's Liens Do Not Have Priority Over AJAR's Interest.**

In its Cross-Claim, AJAR has sought a determination of the validity, priority and amount of the liens asserted by RO15 and Ofer in the Property and by its Cross-Motion seeks a judgment that neither RO15 nor Ofer has a valid enforceable lien, claim or other interest in the Property. Ofer and RO15 assert that they have valid and enforceable liens on the Property because (1) the September 2015 NOC filed by South Beach Construction was never terminated and is still valid and (2) there are numerous claims of lien filed.

Liens for work relating to property improvements are created by filing a claim of lien.  Fla. Stat. §713.08. A claim of lien has priority over other liens, claims and interests filed after the claim of lien, unless the claim of lien relates to a previously recorded NOC.  In such an instance the priority of the claim of lien relates back to the recording of the NOC.  Fla. Stat. §713.07.

A claim of lien may be asserted by a "lienor" which includes a contractor; a laborer; or a materialman who contracts with the owner or a contractor. Fla. Stat. §713.01(18). "Contractor" is defined as "a person other than a materialman or laborer who enters into a contract with the owner of real property for improving it." Fla. Stat. §713.01(8). A contractor's claim of lien can only be asserted by a licensed contractor. Fla. Stat. §713.02(7). "Laborer" is defined as "any person . . . who, under properly authorized contract, personally performs on the site of the improvement labor or services for improving real property and does not furnish materials or labor service of others." Fla. Stat. §713.01(16). "Materialman" is defined as "any person who furnishes materials under contract

to the owner [or] contractor. . . and who performs no labor in the installation thereof." Fla. Stat. §713.01(20).

The Florida Statutes are clear; an enforceable claim of lien requires a contract "because the lien cannot exist without a debt, and the debt cannot exist without a contract, express or implied." *First Nat. Bank v. S. Lumber & Supply Co.,* 106 Fla. 821, 825 (1932). While that contract does not necessarily have to be in writing[34], the contract cannot be one that is only a contract implied by law[35]; it must be a contract implied in fact[36]. *Doug Hambel's Plumbing, Inc. v. Conway*, 831 So. 2d 704, 705 (Fla. 4th DCA 2002).

It is not clear under which kind of "lienor" the claims of lien filed by Ofer and RO15 are based.[37] However, the claim of lien of any kind of "lienor" must be supported by a contract. And there is no question that there is no contract or any agreement between Ofer or RO15 on the one hand and Drexel on the other. The only agreement Ofer or RO15 rely upon is the CDI Construction Agreement supposedly dated October 22, 2015, supposedly between Drexel and CDI.[38] The CDI Construction Agreement is signed by Ofer and Mendez on behalf of CDI as

---

[34] Fla. Stat. §713.01(6).

[35] "A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007).

[36] "A contract implied in fact is an enforceable contract that is inferred in whole or in part from the parties' *conduct,* not solely from their words." *CDS & Assocs. of Palm Beaches, Inc. v. 1711 Donna Rd. Assocs., Inc.,* 743 So. 2d 1223, 1224 (Fla. 4th DCA 1999) (internal citations and quotations omitted) (emphasis in original).

[37] AJAR argues that neither Ofer nor RO15 is a licensed contractor. There is no stipulation regarding that fact and nothing in the record that would affirm or deny that fact so that is an issue that cannot be resolved on summary judgment. However, whether either Ofer or RO15 is a contractor is not the only impediment to the claims of Ofer and RO15.

[38] The parties stipulated to the fact that the only support provided for the liens is the CDI Claims of Lien and the CDI Construction Agreement. (JPS, paras. 34-35, 45-46).

contractor. However, the CDI Construction Agreement does not provide support for the claims of either Ofer or RO15. As AJAR pointed out there are an overwhelming number of undisputed facts that compel this Court to find this document is not a legitimate document. For example,  the Florida Division of Corporations does not list Ofer as being an officer, director or registered agent of CDI until December 21, 2021.  Before that time, the only listed officer or director of CDI was Abraham Jaffe. There is nothing that demonstrates how either Ofer or Mendez would have had the authority in 2015, or any time before December 2021, to sign a document on behalf of CDI.

But even if the document is not manufactured, neither Ofer nor RO15 has provided any explanation why the CDI Construction Agreement is relevant to any claim either asserts against the Property.[39]

Finally, even if the CDI Construction Agreement was authentic, and even if Ofer and RO15 had provided any explanation that the CDI Construction Agreement had any relevancy to their claims, any claims of CDI under the CDI Construction Agreement were  satisfied, according to CDI's authorized agent at the time, Abraham Jaffe[40], and all NOCs which listed CDI as contractor were terminated, according to Ofer[41].  Although, presumably CDI had some sort of an agreement or agreements with Drexel since CDI did file two NOCs, the 2018 NOC and the 2019 NOC,[42] on July 14, 2019, Ofer, on behalf of Drexel, executed the 2019 Termination stating that all claims of lien against the Property had been

---

[39] Additionally, because the CDI Claims of Lien were filed post-petition, they are void.
[40] *See* (JPS, para. 42).
[41] *See* (JPS, paras. 39, 41).
[42] *See* (JPS, paras. 38, 40).

satisfied. On March 20, 2020, Ofer, on behalf of Drexel, executed the 2020 Termination stating that all claims of lien against the Property had been satisfied. Attached to this 2020 Termination was the CDI NOC Release signed by Abraham Jaffe on behalf of CDI, stating that all work performed as of February 20, 2020 had been completed, and that all subcontractors, laborers and materialmen, as well as CDI were paid up to date with no money owed to any of them by Drexel.

All but one of the claims of lien filed by RO15 and Ofer were filed after AJAR had title to the Property. Thus, only the December 1, 2020 claim of lien filed by RO15 could possibly have priority over AJAR's interest, unless the other claims of lien relate back to a previously filed NOC. However, there is no previously filed NOC upon which either Ofer or RO15 may rely to assert a relation back, even if all other elements of relation back were present, which they are not.

Ofer and RO15 seek to rely on the September 2015 NOC filed by South Beach Construction. There is no legal or factual support for this assertion. Unless otherwise specified in the NOC, a NOC expires within one year. Fla. Stat. §713.13(1)(d). A NOC may be amended to extend the effective period, to change erroneous information, or to add information. Fla Stat. §713.13(5). However, the Florida Statutes are very clear, if there is a change in contractor, a new NOC must be executed and recorded.  Fla. Stat. §713.13(5)(a).  RO15 and Ofer argue that it doesn't matter that the NOC lists South Beach Construction rather than RO15, or Ofer, or CDI as the contractor since a construction lien is not invalidated by the lienor's mistaken failure to have its name included in the NOC as contractor. *See Trump Endeavor 12 LLC v. Fernich, Inc.*, 216 So. 3d 704 (Fla. 3d DCA 2017).

However, there was no mistake in the South Beach Construction NOC; South Beach Construction WAS the contractor. There was no error or omission in the name of the contractor; DRO, Ofer, and RO15 are claiming a change of contractor. But the Florida construction lien statutes are strictly construed. *See Home Elec. of Dade County, Inc. v. Gonas*, 547 So. 2d 109, 110-11 (Fla. 1989). No court, including this Court, has the authority to ignore the strict requirements of the Florida statutes. *See Dracon Const., Inc. v. Facility Const. Mgmt., Inc.,* 828 So. 2d 1069, 1071 (Fla. 4th DCA 2002). Accepting the argument on its face, the position of Ofer and RO15 is that one of them took over as contractor – that is a change - and that required a new NOC.

Finally, South Beach Construction filed a satisfaction and release of its lien on June 15, 2017. Thus, under the terms of the Florida statutes the September 2015 NOC has no continuing import.[43] Moreover, as already noted, Ofer filed two termination notices, the 2019 Termination and the 2020 Termination, both of which terminated the effectiveness of any NOC that predated the execution of those termination notices. Because the September 2015 NOC is no longer effective, no entity, including RO15, Ofer, or CDI can rely on the NOC to establish relation back priority of their claims of lien.

AJAR argues that neither RO15 nor Ofer has provided any support for the amounts included in the claims of lien other than the previously recorded claims of lien and the two post-petition CDI Claims of Lien. Ofer and RO15 have

---

[43] At the Hearing, counsel for RO15 and Ofer argued that the September 2015 NOC is still valid because "the permit" is still open. However, counsel did not include any copy of, or even mention, any permit in connection with its Joinder. No such permit was included as an exhibit. Nor did counsel cite to any statute or regulation that would support this argument.

correctly argued that the facial validity of a claim of lien does not require a detailed accounting of what is included in the claim of lien amount.

However, when a claim of lien is challenged, as the RO15 and Ofer claims of lien are challenged in  AJAR's Cross-Motion, RO15 and Ofer had to substantiate their claims. The argument raised by RO15 and Ofer regarding facial validity may be appropriate in a motion to dismiss, but that argument is not appropriate in opposition to a request for summary judgment. The Federal Rules of Civil Procedure require, as with every other element of a material claim or defense, that the party asserting such claim or defense "must support the assertion by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

In any litigation involving a claim of a party to amounts owed to it, the burden of proof is on the party to support the amounts due. *See Torres v. MacIntyre,* 334 So. 2d 59, 60 (Fla. 3d DCA 1976) ("The initial burden must of necessity be upon the lienor to show his performance of the statutory requirements of a lien."); *Tuttle/White Constructors, Inc. v. Hughes Supply, Inc.,*

371 So. 2d 559, 564–65 (Fla. 4th DCA 1979) (materialmen must prove delivery of material to property as well as value of the material); *Beautyware Plumbing Supply Co. v. Columbiad Apartments, Inc.,* 215 So. 2d 42 (Fla. 4th DCA 1968) (same); *In re Starlight Homes, Inc.*, 297 B.R. 856, 860 (Bankr. M.D. Fla. 2003) ("burden of proving that the claimant furnished labor or material for the improvement of the property is on the claimant."); *see also Sam Rodgers Properties, Inc. v. Chmura*, 61 So. 3d 432, 437 (Fla. 2d DCA 2011) ("To establish breach of a real estate contract, the plaintiff bears the burden of proving by a preponderance of the evidence the existence of a contract, a breach of that contract, and damages resulting from the breach.").

Thus the burden was on RO15 and Ofer to file with their opposition any support they have for the claims of lien filed.[44]  The only support that has been offered is the alleged CDI Construction Agreement, the void CDI Claims of Lien, and Ofer's affidavit in which he states generally that he "filed an NOC in 2015 before starting the renovations . . . began to advance sums for the improvements to Drexel and to secure [his] position, [he] executed a Consent Judgment in favor of [himself] in the event of any failures of performance on the part of Drexel. . . . On November 20, 2020, RO 15 caused a claim of lien to be recorded on the Property in the amount of $8,785,000.00 to protect itself for sums advanced for improvements to the Property and other costs which it incurred."[45, 46] As fully

---

[44] The Court had already advised Ofer and RO15 that they may not rely on any documents to support their claims against the Property that were not already produced.

[45] (*See Affidavit of Raziel Ofer in Support of Plaintiff's Motion for Summary Judgment*, Ex. A, at paras. 15-16, 24 (ECF #25)).

[46] Counsel for RO15 and Ofer also argued at the Hearing that a title report listed these claims of lien as open. A title report listing open claims of lien means nothing more than the claims of lien appear in the public records and either must be resolved or will be listed as title exceptions on any final title policy.

detailed in this opinion, none of these provide the "proper support" required by Ofer or RO15 under Rule 56.[47]

### V.    DRO's Affirmative Defense of Unclean Hands Does Not Prevent the Granting of Summary Judgment.

At the Hearing, counsel for DRO argued that because AJAR did not address DRO's affirmative defense of unclean hands, summary judgment is improper. DRO's Answer and Affirmative Defenses asserts two affirmative defenses: (1) AJAR's counterclaim is barred by its unclean hands; and (2) AJAR's counterclaim is barred by its own inequitable conduct. AJAR's counterclaim against DRO is for a determination of DRO's interest in the Property. AJAR correctly argued at the Hearing that unclean hands is relevant only to a reformation claim[48] and is not a defense to a claim of superior title to the Property. *See Regions Bank v. Old Jupiter, LLC,* 2010 WL 5148467, at *6 (S.D. Fla. 2010), aff'd, 449 F. App'x 818 (11th Cir. 2011) ("The unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses.").

### <u>CONCLUSION</u>

DRO and Ofer asked this Court to determine this dispute, over the oft-repeated objections of AJAR. DRO and AJAR agreed that this issue could be

---

[47] It may be that, as Ofer claims, either he, or RO15, or both, invested several million dollars to pay for work at the Property.  There are ways for owners to protect such investments if the owner intends that investment to be treated as more than a capital contribution.  For example, an owner could make a loan, evidenced by a note and a mortgage.  However, Ofer did not take any such steps to protect his investment, other than an alleged consent judgment that has never been produced, and the unsupported claims of lien.

[48] DRO did not cite to any case law or statute that would demonstrate the relevancy of unclean hands to the title dispute other than with respect to the reformation claims, which the Court has already addressed.

resolved on summary judgment.  The Court agrees and finds that based on materially undisputed facts, the Property belongs to AJAR.

DRO and Ofer have argued that it is not right that AJAR should be able to get property worth millions of dollars for only the $5.00 it paid at the Sheriff's Sale, that Opustone has been paid the judgment amount, and that to allow this result is inequitable and manifestly unjust.[49] The Court does not disagree that AJAR got the Property for a ridiculously small amount. But whether this result is "unfair" or "manifestly unjust" was argued, unsuccessfully before a state court judge. The loss of the Property is the consequence of Ofer not paying the Opustone Judgment when it was entered, not bonding the Opustone Judgment while appealing, not proofreading a critical document[50], and not attending the execution sale. At any one and every one of these stages Ofer could have protected the Property, but chose instead to take steps that ultimately led to the loss of the Property.[51] Those bad choices are not something this Court can fix

---

[49] The Court understands that Ofer and DRO raised several objections to the process before the state court in the Opustone Action, all of which were rejected by the state court for reasons that this Court cannot discern. While the Court may have ruled differently, those issues have been finally adjudicated by a different court with jurisdiction. Unfortunately, an apparently late appeal foreclosed any consideration of that lower court decision. While the issues raised before the state court are not relevant to this ruling, the Court notes that a number of facts alleged by DRO and Ofer, if true, are troubling. Of particular concern to this Court is what appears to be promises made by Mr. Rodriguez to Ofer, in his capacity as attorney for Opustone, relating to execution of the Opustone Judgment, while as counsel to, and an apparent principal of AJAR, Mr. Rodriguez was taking action directly contrary to those promises. Whether and to what extent those events give rise to a cause of action by Ofer against either Opustone or Mr. Rodriguez is not an issue that can or should be decided by this Court, and are not relevant to this ruling.  However, the Court wants to make clear that its ruling in this dispute is not an adjudication of the validity of any such claims by Ofer or any other party relating to the post-execution events, other than that which is directly decided here.

[50] *See In re Pope,* 631 B.R. 55 (Bankr. M.D. Fla. 2021) (holding when a closing agent put the wrong mortgagor name on a mortgage and tried to fix it unilaterally, the mortgage was void *ab initio* and the mortgage holder could not enforce it even after many years.).

[51] DRO and Ofer also argue that Mr. Rodriguez' lobbying of the Miami Dade Property Appraiser regarding which deed to recognize is evidence of AJAR's unclean hands. Even if what took place at the Property Appraiser's office is as DRO and Ofer describe, none of what occurred there had

based on the relief that DRO has asked of this Court in its Complaint. The court that *could* fix this has, correctly or not, ruled against Ofer and DRO. The Court, as promised, can only apply the law and the facts as they have been presented.

Accordingly, for the foregoing reasons, it is ORDERED as follows:

1.    DRO's Motion is DENIED.

2.    AJAR's Cross-Motion is GRANTED.

3.    The Court will set a status conference by separate order to determine what steps should be taken next in light of this ruling.

###

Copies to:
Mark S. Roher, Esq.
David L. Rosendorf, Esq.
David J. Winker Esq.


*Attorney Rosendorf is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*

---

any impact on the validity of the DRO Quit Claim Deed, since the Property Appraiser does not have the power to confer ownership on any party.  Indeed, the DRO Quit Claim Deed should never have been accepted for recording by the Miami-Dade County Clerk.  In addition to the invalid signature block for the grantor, one of the two witness signatures is not proper since the name of the witness is not printed. Had the clerk of court properly rejected the DRO Quit Claim Deed, or, as DRO and Ofer argue, had the Property Appraiser notified DRO or Ofer of the problem with the deed (which is something the Property Appraiser apparently does if a problem is noted, but is not, apparently, legally obligated to do) then Ofer would have known the DRO Quit Claim Deed was invalid and, presumably, he would have fixed it. But none of that has any bearing on this ruling other than to underscore the importance of the other steps that Ofer did not take to avoid the consequence of losing an incredibly valuable property for what is clearly a nominal amount.